UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STORM PRODUCTIONS LLC, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | No.<br><br>COMPLAINT—CLASS ACTION<br><br>JURY DEMAND |

## CLASS ACTION COMPLAINT

Plaintiff Storm Productions LLC brings this class action complaint, on behalf of itself and all others similarly situated, against Defendant Microsoft Corporation for surreptitiously stealing their rightfully earned affiliate marketing commissions through the Microsoft Shopping browser extension. Plaintiff makes these allegations based on personal knowledge as to itself and on information and belief as to all other matters.

## INTRODUCTION

1. Microsoft Shopping is a free browser extension with millions of users that claims to help online shoppers search for discounts, find better prices, and earn cash-back rewards.

CLASS ACTION COMPLAINT - 1

2.	But behind this consumer-friendly facade, Microsoft uses the extension to poach affiliate marketing commissions from influencers, bloggers, and other content creators who drive online sales.

3.	Content creators earn these commissions by promoting products and services to their audiences through affiliate links. These links, provided by online merchants or third-party affiliate networks, contain a unique code identifying the content creator. When a consumer clicks an affiliate link and visits a merchant's website, that unique code is stored in a cookie on the consumer's browser, marking the content creator as the referral source. If the consumer then completes a purchase, the merchant uses the cookie to credit the sale to the content creator and ensure they receive a commission.

4.	But Microsoft hijacks that system by inserting itself into the transaction at the last minute. Before the consumer completes their purchase, the Microsoft Shopping browser extension replaces the content creator's affiliate cookie with Microsoft's own cookie. The result: Microsoft pockets the commission, leaving the content creator who generated the sale empty-handed.

5.	Plaintiff is a content creator whose commissions Microsoft has misappropriated. Plaintiff brings this class action, on behalf of itself and all others similarly situated, to halt Microsoft's unlawful practices and seek redress for the harm it has caused.

## JURISDICTION AND VENUE

6.	This Court has subject-matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 class members, the total amount in controversy exceeds $5 million, exclusive of interests and costs, and at least one class member is diverse in citizenship from Microsoft.

7. This Court has personal jurisdiction over Microsoft because Microsoft maintains its principal place of business in Washington.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Microsoft maintains its principal place of business in this district and a substantial part of the events or omissions giving rise to the claims arose here.

## PARTIES

9. Plaintiff Storm Productions LLC is a New York limited liability company with its principal place of business in New York, New York.

10. Defendant Microsoft Corporation is a Washington corporation with its principal place of business at 1 Microsoft Way, Redmond, Washington 98052.

## STATEMENT OF FACTS

**I.    Affiliate Marketing: A Performance-Based Strategy**

11. Affiliate marketing is a multibillion-dollar industry built on partnerships between online merchants and content creators. Content creators cultivate loyal audiences by sharing authentic, relatable content. Leveraging this trust, merchants partner with content creators to drive traffic to their websites and generate sales. Through affiliate marketing programs, merchants enable content creators to promote their products and services in exchange for commissions on resulting sales. These programs may be managed directly by merchants or through affiliate networks—third-party intermediaries that connect merchants with content creators and facilitate their collaborations.

CLASS ACTION COMPLAINT - 3

12. Affiliate marketing is one of the fastest-growing industries. It has grown 83% since 2017.[1] According to one estimate, affiliate-marketing spending exceeded $9.5 billion in 2023 and will reach nearly $16 billion by 2028.[2]

13. Here is how affiliate marketing works: a content creator advertises a merchant's product or service to their audience and shares a unique affiliate link that directs consumers to the merchant's website. When a consumer clicks on the link, a cookie—a small text file that ties the consumer's activity to the content creator—is placed on their browser. Merchants then use this cookie to confirm the content creator referred the consumer and attribute the resulting sale, and the resulting commission, to the creator. The cookie remains active for a set period (for example, 14 or 30 days), ensuring the content creator receives credit for a sale if the consumer completes a purchase within that time frame.

**II.     Microsoft Shopping: A Free Browser Extension That Comes at a Cost**

14. Microsoft launched its Microsoft Shopping browser extension in 2020. Microsoft markets the extension as a free tool that helps consumers find "coupons, discounts, and cashback offers on just about anything" while online shopping.[3] It also promises that Microsoft Shopping will "search[] the web to find the best prices online" and "keep[] track of an item's price after you've made the purchase."[4]

---

[1] Charlotte Muzzi, *Affiliate Marketing Statistics You Can't Ignore in 2024*, Shopify (July 31, 2024), https://www.shopify.com/blog/affiliate-marketing-compliance.
[2] *Affiliate Marketing 101: What It Is and How to Get Started*, BigCommerce (Dec. 20, 2024), https://www.bigcommerce.com/articles/ecommerce/affiliate-marketing/.
[3] *Shop Smarter with Microsoft Edge*, Microsoft Edge Shopping, https://www.microsoft.com/en-us/edge/shopping?form=MG0AU0&cs=4112006293 (last visited Jan. 30, 2025).
[4] *Id.*

CLASS ACTION COMPLAINT - 4

15. Unlike typical browser extensions that consumers must actively seek out and install, Microsoft Shopping comes pre-installed on Microsoft Edge—the default web browser on all Windows computers and the third most popular browser in the United States.

16. Since its launch in 2020, Microsoft has expanded Microsoft Shopping's reach by making the extension available on other popular web browsers like Google Chrome, the world's most widely used browser. Microsoft has also integrated Microsoft Shopping directly into its Bing search engine, allowing the tool to reach consumers who use web browsers that do not support the extension, like Mozilla Firefox and Safari. As a result, millions of individuals use Microsoft Shopping.

17. But Microsoft Shopping does far more than just help consumers save money. Behind the scenes, the browser extension acts to steal affiliate commissions from content creators by swapping their affiliate cookies for Microsoft's own without their knowledge. In so doing, Microsoft turns the extension's millions of users into unwitting participants in a large-scale scheme against content creators.

18. Recall that when a consumer clicks on a content creator's affiliate link, that link sends them to a merchant's website. And once there, a tracking cookie is placed on the user's browser that identifies the content creator as the source of the referral. The consumer then adds a product to their cart. As they proceed through the checkout process, a Microsoft Shopping pop-up might appear that says the browser extension found coupons, and it entices the user to click "Try all coupons" to test and apply them. When the user clicks this button, Microsoft Shopping quietly removes the content creator's affiliate cookie and replaces it with Microsoft's cookie—whether or

not any coupons actually work—thereby diverting the content creator's affiliate commission for the resulting sale to Microsoft.

19. As another example, even when Microsoft Shopping finds no coupons, a pop-up might appear that says the consumer can "[g]et up to 12% cash back" and prompts the user to click "OK." When the consumer clicks that button, Microsoft Shopping likewise replaces the content creator's affiliate cookie with Microsoft's cookie, causing Microsoft to receive the content creator's affiliate commission.

20. This covert practice of systematically overriding affiliate cookies enables Microsoft to divert affiliate commissions from the content creators who rightfully earned them to itself by exploiting the "last-click attribution" industry standard. Under this attribution model, the affiliate who last referred a consumer to the website before the consumer completes a purchase receives full credit for the sale.

21. Microsoft's scheme to steal content creators' affiliate commissions is deceptive, unfair, and unlawful. And as a direct result of Microsoft's wrongful actions, Plaintiff and class members regularly lose commissions they rightfully earn.

**III. Plaintiff's Experience**

22. Since 2008, Plaintiff has operated a popular shopping blog called Madison Avenue Spy that showcases the best deals in the fashion world via affiliate links. The blog has nearly 22,000 subscribers and generates significant traffic. Plaintiff also runs an Instagram account by the same name and a Substack called MadSpy, where it also regularly posts fashion affiliate links. The Instagram account has approximately 110,000 followers, and the Substack has over 12,000

1  subscribers. In addition to these platforms, Madison Avenue Spy has an online presence on

2  Pinterest, TikTok, X (formerly Twitter), Facebook, and Telegram.

3       23.    Plaintiff invests substantial time and effort into cultivating its follower-base,

4  searching for the best fashion deals from online merchants, and promoting those deals online.

5       24.    Plaintiff regularly partners with merchants, either directly or through third-party

6  affiliate networks, to advertise their products through affiliate links. Plaintiff directly influences

7  millions of dollars in retail purchases every year.

8       25.    For years, Plaintiff has earned substantial commissions on sales generated via

9  affiliate links.

10       26.    Plaintiff would have earned more in commissions but for Microsoft's scheme to

11  poach commissions via its Microsoft Shopping browser extension. Through this extension,

12  Microsoft stole credit for sales that Plaintiff generated with its affiliate links.

### CLASS ACTION ALLEGATIONS

14       27.    Under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(3), and/or (c)(4), Plaintiff

15  asserts claims on behalf of itself and the following proposed class and subclass:

> **Nationwide class**: All persons (corporate or individual) in the United States who have participated in an affiliate marketing program with a United States online merchant and had their commissions diverted to Microsoft via the Microsoft Shopping browser extension.
>
> **New York subclass**: All persons (corporate or individual) residing in New York who have participated in an affiliate marketing program with a United States online merchant and had their commissions diverted to Microsoft via the Microsoft Shopping browser extension.

28. The class excludes Microsoft and its officers, directors, management, employees, subsidiaries, and affiliates; the judicial officers presiding over this action, their immediate family members, and judicial staff; and governmental entities.

29. This action satisfies all the relevant Rule 23 requirements

30. The classes are so numerous that joinder of all members is impracticable. There are at least tens of thousands of class members geographically dispersed throughout the United States. The precise number of class members and their identities are unavailable to Plaintiff at this time but may be determined through discovery, including of Microsoft's records.

31. Plaintiff's claims are typical of other class members' claims because, like every class member, Plaintiff has participated in an affiliate marketing program with at least one United States online merchant and, upon information and belief, has had its commissions diverted by Microsoft via the Microsoft Shopping browser extension. The factual and legal bases of Microsoft's liability are the same and resulted in injury to Plaintiff and all class members.

32. Common questions of law and fact exist as to all class members, and those questions predominate over questions affecting only individual class members. Common legal and factual questions include but are not limited to: (1) whether Microsoft designed its Microsoft Shopping browser extension to divert commissions earned by content creators to Microsoft; (2) whether the Microsoft Shopping browser extension in fact diverted commissions earned by content creators to Microsoft; (3) whether Microsoft was unjustly enriched to the detriment of Plaintiff and class members in the form of commission payments; (4) as to the New York subclass, whether Microsoft's acts and practices violated the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349; (5) whether Microsoft's acts and practices harmed Plaintiff and class members;

(6) whether Plaintiff and class members are entitled to damages and other monetary relief, and if so, the appropriate measure of such relief; and (7) the nature and scope of appropriate injunctive relief.

33. Plaintiff is an adequate representative of class members because its interests do not conflict with their interests, it has retained competent counsel experienced in prosecuting class actions, and it intends to prosecute this action vigorously. The interests of class members will be fairly and adequately protected by Plaintiff and its counsel.

34. The class mechanism is superior to other available means for the fair and efficient adjudication of class members' claims. Individual class members may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Microsoft's liability. Individual litigation would increase the delay and expense to all parties and multiply the burden on the judicial system by the complex legal and factual issues of this case. Individual litigation would also present a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue Microsoft's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

35. Additionally, Microsoft has acted or refused to act on grounds that apply generally and uniformly to Plaintiff and class members, such that classwide final injunctive relief and corresponding declaratory relief is appropriate.

## CAUSES OF ACTION

### COUNT I
### Unjust Enrichment
*On behalf of Plaintiff and the class*

36. Plaintiff repeats and realleges all preceding paragraphs.

37. Plaintiff and class members have an interest, both equitable and legal, in the affiliate commissions to which they were wrongfully deprived. These commissions were rightfully earned by Plaintiff and class members, not Microsoft.

38. Through its unjust and improper use of the Microsoft Shopping browser extension, Microsoft received benefits in the form of commissions for sales that were generated by Plaintiff and class members.

39. Microsoft understood that it so benefitted, and it also understood and appreciated that its Microsoft Shopping browser extension would cause the harm described in this complaint.

40. But for Microsoft's unjust and improper use of its Microsoft Shopping browser extension, Microsoft would not have received commissions on sales generated by Plaintiff and class members.

41. Microsoft has been unjustly enriched at the expense of Plaintiff and class members by the payment of diverted affiliate commissions, and Microsoft has unjustly retained the benefits of its unlawful and wrongful conduct.

42. In light of Microsoft's conduct, it would be inequitable and unjust for Microsoft to retain these benefits. Microsoft should be required in equity to make restitution of these payments to the content creators from whom they were diverted.

## COUNT II
### Interference with Prospective Economic Advantage or Expectancy
*On behalf of Plaintiff and the class*

43. Plaintiff repeats and realleges paragraphs 1 through 35.

44. Plaintiff and class members had and have ongoing economic partnerships or business expectancies with merchants whereby they refer their audiences to merchants' websites through affiliate links. In return, the merchants, directly or through affiliate networks, pay them commissions on sales they generate.

45. Microsoft is aware or should have been aware of these partnerships and expectancies.

46. Microsoft intentionally and unlawfully interferes with and disrupts these partnerships and expectancies through its Microsoft Shopping browser extension. As alleged above, this extension replaces Plaintiff's and class members' affiliate cookies with Microsoft's cookies, improperly diverting their commissions to Microsoft.

47. Microsoft is liable to Plaintiff and class members for damages in an amount to be determined at trial

## COUNT III
### Interference with Contractual or Business Relations
*On behalf of Plaintiff and the class*

48. Plaintiff repeats and realleges paragraphs 1 through 35.

49. Plaintiff and class members had and have existing contractual or business relationships with at least one online merchant, under which Plaintiff and class members drive sales by promoting the merchant's products and services through affiliate links in exchange for commissions on the sales they generate.

CLASS ACTION COMPLAINT - 11

50. Microsoft knew about these contractual or business relationships. Specifically, Microsoft knew that Plaintiff and class members work with merchants to promote products and services via affiliate links. Microsoft also knew that Plaintiff and class members earn commissions and that merchants use last-click attribution to assess the sales generated.

51. Microsoft's conduct disrupted these pre-existing contractual or business relationships by replacing Plaintiff's and class members' cookies with its own, thereby preventing Plaintiff and class members from realizing their entitlements under these contracts.

52. Microsoft acted intentionally or knew that its actions made performance more expensive or burdensome and would disrupt these pre-existing contractual or business relationships.

53. As a direct and proximate result of Microsoft's conduct, Plaintiff and class members suffered economic harm in that they were deprived of the commissions they earned for generating sales via their affiliate links.

54. Microsoft is liable to Plaintiff and class members for damages in an amount to be determined at trial.

## COUNT IV
### Conversion
*On behalf of Plaintiff and the class*

55. Plaintiff repeats and realleges paragraphs 1 through 35.

56. Plaintiff and class members had the right to commissions that they earned from online merchants by referring consumers to products and services sold by those merchants via affiliate links.

CLASS ACTION COMPLAINT - 12

57. Microsoft intentionally and substantially interfered with Plaintiff's and class members' personal property by using its Microsoft Shopping browser extension to divert commissions to itself that rightfully belong to Plaintiff and class members.

58. Microsoft took possession of these commissions without authorization or justification and exercised ownership over them, depriving Plaintiff and class members of their rightful property. This unauthorized control over the commissions constitutes conversion.

59. Plaintiff and class members neither assented to nor ratified Microsoft's interference with their commissions.

60. Plaintiff's and class members' rightful commissions poached by Microsoft are specific sums capable of identification.

61. Microsoft's actions have caused Plaintiff and class members significant economic harm by depriving them of their rightful commissions.

62. Microsoft is liable to Plaintiff and class members for damages and costs permitted by law.

## COUNT V
**Violation of the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349**
*On behalf of Plaintiff and the class*

63. Plaintiff repeats and realleges paragraphs 1 through 35.

64. Under the New York Deceptive Practices Act, it is unlawful for any person or entity to use deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

65. Plaintiff and the members of the New York subclass are considered "persons" for the purpose of the Act.

66. Microsoft's acts, omissions, practices, and nondisclosures as alleged in this complaint constitute unlawful deceptive acts or practices within the meaning of the Act.

67. Microsoft engaged in consumer-oriented conduct by directing their deceptive acts and practices to the consuming public and the marketplace, thereby impacting the consumer decision-making process.

68. Microsoft's acts or practices were deceptive and misleading in a material way. Microsoft's actions are likely to mislead a reasonable consumer acting under reasonable circumstances.

69. Plaintiff and members of the New York subclass suffered an injury as a result of Microsoft's deception. Microsoft covertly replaces their affiliate cookies with its own to divert their commissions to itself, with no corresponding benefit to Plaintiff or the subclass members. And because the Microsoft Shopping extension acted in a covert manner, Plaintiff and subclass members could not have avoided the harm.

70. As a direct and proximate result of Microsoft's wrongful conduct, Plaintiff and subclass members have suffered damages, including lost affiliate commissions.

71. Microsoft is liable to Plaintiff and the New York subclass members for damages, costs, and injunctive relief as permitted by law.

## **REQUEST FOR RELIEF**

Plaintiff, on behalf of itself and all others similarly situated, respectfully requests that the Court:

A. Certify this case as a class action, designate Plaintiff as class representative, and appoint its attorneys as class counsel;

B. Enter judgment in favor of Plaintiff and class members;

C. Award injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and class members, including to prevent Microsoft from diverting their rightfully earned commissions to itself;

D. Award damages, including actual, general, special, incidental, statutory, treble, punitive or exemplary, liquidated, and consequential damages, in an amount to be determined at trial;

E. Award disgorgement of all ill-gotten profits and restitution of all revenues obtained from Plaintiff and class members as a result of Microsoft's unlawful conduct;

F. Award reasonable attorney fees and costs;

G. Award pre- and post-judgment interest as allowed by law;

H. Grant any further relief that the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues so triable.

Dated: January 31, 2025

Respectfully submitted,

**TOUSLEY BRAIN STEPHENS PLLC**

By: /s/Jason T. Dennett
Jason T. Dennett, WSBA #30686
jdennett@tousley.com
By: /s/Joan M. Pradhan
Joan Pradhan, WSBA #58134
jpradhan@tousley.com
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682-5600

CLASS ACTION COMPLAINT - 15

| | |
|---|---|
| 1 | **STUEVE SIEGEL HANSON LLP** |
| 2 | Norman E. Siegel* (Missouri Bar No. 44378) |
|   | Barrett J. Vahle* (Missouri Bar No. 56674) |
| 3 | Joy D. Merklen* (Missouri Bar No. 77069) |
|   | 460 Nichols Road, Suite 200 |
| 4 | Kansas City, Missouri 64112 |
|   | Telephone: (816) 714-7100 |
| 5 | siegel@stuevesiegel.com |
|   | vahle@stuevesiegel.com |
| 6 | merklen@stuevesiegel.com |

\* *Pro hac vice forthcoming*

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT - 16